UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JOSE MARIO NAVA,

      Petitioner,

v.

                                 CASE NO. 6:10-cv-00100-22GJK

SECRETARY, DEPARTMENT OF
CORRECTIONS, et al.,

      Respondents.

_____/

## **ORDER**

This case is before the Court on a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Jose Mario Nava ("Petitioner") alleging eight claims for relief (Doc. 1, filed January 19, 2010). Upon consideration of the petition, the Court ordered Respondents to show cause why the relief sought in the petition should not be granted (Doc. 6). Thereafter, Respondents filed a response to the petition in compliance with this Court's instructions and with the *Rules Governing Section 2254 Cases in the United States District Courts* (Doc. 11). Petitioner filed an amended reply to the response (Doc. 17).

Petitioner alleges that: 1) his trial counsel ("counsel") was ineffective for failing to strike a juror who had a memory problem; 2) counsel was ineffective for failing to move to suppress a statement taken in violation of Petitioner's *Miranda* rights; 3) counsel was ineffective for failing to subpoena the Florida Highway Patrol ("FHP") video log sheet; 4) counsel was ineffective for filing a boilerplate motion for a judgment of acquittal; 5) counsel was ineffective for not objecting to the prosecutor's comments on Petitioner's right to remain silent; 6) counsel was

ineffective for failing to investigate the FHP policy manual; 7) the trial court erred in denying Petitioner's motion for judgment of acquittal; and 8) fundamental error occurred when Petitioner's defense theory was undermined by the standard jury instructions and misleading statements by the prosecutor.

Upon due consideration of the petition, the memorandum of law in support of the petition, the response, the state-court record contained in Respondents' appendix, and Petitioner's amended reply, the Court concludes that the petition is due to be denied.

## I.    Procedural History

On September 18, 2006, Petitioner and his co-defendant brother were charged by amended information with trafficking in more than 400 grams of cocaine (count one) and carrying a concealed weapon during the commission of a felony (count two).  A jury trial was held on September 21-22, 2006 (App. O).[1]  Both defendants were found guilty as to count one and not guilty as to count two.    Petitioner was sentenced to fifteen years in prison (App. B at 283, 295).

On direct appeal Petitioner argued that the trial court erred in denying his motion for judgment of acquittal and that fundamental error occurred when Petitioner's defense theory was undermined by misleading jury instructions and comments made by the prosecutor during closing arguments (App. C).  The Fifth District Court of Appeal *per curiam* affirmed (App. C); *Nava v. State*, 972 So. 2d 200 (Fla. 5th DCA 2008).

Petitioner subsequently filed a motion for post-conviction relief pursuant to Florida Rule of Criminal Procedure 3.850, raising eleven separate claims for relief (App. D).  The trial court

---

[1]Referenced appendices are to those contained in Respondents' Appendix, filed on June 14, 2010 (Doc. 13).

issued a written opinion denying each claim (App. F).  On August 29, 2009, the Fifth District Court of Appeal *per curiam* affirmed the trial court's denial of post conviction relief (App. G); *Nava v. State*, 22 So. 3d 91 (Fla. 5th DCA 2009).

The instant petition was timely filed in this Court on January 19, 2010 (Doc. 1).

## II.     Governing Legal Principles

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003).  The AEDPA "establishes a more deferential standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

### A.     Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

3

28 U.S.C. § 2254(d).   The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

The United States Supreme Court has clarified the meaning of "contrary to" and "unreasonable application" as used in 28 U.S.C. § 2254(d)(1):

> [Section] 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meanings. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams* that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002).

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

### B.      Standard for Ineffective Assistance of Counsel

In *Strickland v. Washinton*, the United States Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below

4

an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] 466 U.S. 668, 687-88 (1984).  A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  *Id*. at 689-90.  Therefore, when deciding an actual ineffectiveness claim a court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

 As observed by the Eleventh Circuit Court of Appeals:

> [The test for ineffective assistance of counsel] has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.  Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight.  *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted).  Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

Finally, because the "components of the ineffectiveness inquiry are mixed questions of law and fact, . . . a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d)." *Strickland*, 466 U.S. at 698.  Nonetheless, "state court findings of fact made in the course of

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 91993), the Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d)." *Id.*

III.    **Analysis**

A.    **Claim One**

Petitioner alleges that counsel was ineffective for failing to strike a venire member from the jury on the ground that she admitted during voir dire to having a "memory problem." (Doc. 1 at 5).   Specifically, Petitioner refers to Juror Marjorie Lawson ("Lawson") who expressed concerns to the trial court during voir dire regarding her education and her memory (Doc. 2 at 10).   Petitioner claims that he was prejudiced by counsel's alleged failure because the "juror [who] had [a] medical condition of memory loss reached a verdict on the basis of not understanding the trial evidence." (Doc. 2 at 11).

Petitioner raised this issue in his Rule 3.850 motion for post conviction relief (App. D). The trial court denied the claim on the grounds that Lawson was questioned regarding her understanding of what had occurred during the jury selection process and she indicated that she understood the proceedings.   Furthermore, Lawson assured the State that she would alert the parties if her memory or education caused problems during trial (App. F at 3).   As such, the trial court determined that counsel did not have grounds to seek a challenge for cause to strike Lawson from the panel (App. F at 3).   A review of the record supports the state court's factual determinations and legal conclusions.

During voir dire, Lawson was asked whether there was anything unique about her background that the lawyers should know.   She told the court, "I don't think I have the education and my memory is not good anymore with anything.   I forget things like from here to there.   I'm terrible anymore." (App. L at 40).   However, Lawson also told the court that she understood the

proceedings "so far" and the court assured Lawson that "it doesn't get much more complicated" than what had already transpired (App. L at 41).   Later, the State questioned Lawson about her concerns:

| [STATE]: | Okay.  Thank you.  Now, Ms. Lawson, what we discussed at side bar, is that something that will cause you concern or keep your mind off of evidence presented? |
|---|---|
| [LAWSON]: | I don't think so. |
| [STATE]: | Okay.  If there comes a time that perhaps maybe you feel that's a problem, will you let us know? |
| [LAWSON]: | Yes. |
| [STATE]: | Feel free, especially at this stage, to speak freely. |
| [LAWSON]: | Okay. |

(App. L at 68).  When the venire was queried by the court as to whether they could be fair and impartial, they collectively answered affirmatively (App. L at 111).

Effective assistance of counsel is required during the voir dire process. *Brown v. Jones*, 255 F.3d 1273, 1279-80 (11th Cir. 2001); *Hughes v. United States*, 258 F.3d 453, 456 (6th Cir.2001).  However, deference is afforded to counsel's actions during voir dire, as voir dire is recognized to involve considerations of strategy. *Brown,* 255 F.3d at 1280*; Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir.1995).  A defendant claiming ineffective assistance of counsel during voir dire must show that counsel's actions were "so ill chosen that it permeates the entire trial with obvious unfairness." *Teague*, 60 F.3d at 1172 (quoting *Garland v. Maggio*, 717 F.2d 199, 206 (5th Cir.1983)).  Based upon the record before this Court, Petitioner has failed to overcome the presumption that defense counsel's decision to not challenge Lawson for cause constituted

7

reasonable professional judgment. Lawson indicated that she understood the proceedings and would notify the court if she had any problems with her memory.  Furthermore, Lawson did not indicate that she had a "serious impairment with her memory" as alleged by Petitioner (Doc 17 at 3).  Rather, she expressed concern about her lack of education and her decline in memory.  There was no basis for counsel to challenge Lawson for cause, and counsel was not ineffective for failing to do so.

Furthermore, Petitioner cannot establish prejudice.  In order to satisfy the prejudice prong of *Strickland*, a petitioner must show that the selection process actually produced a biased juror. *Hughes*, 258 F.3d at 458; *see also Rogers v. McMullen*, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury not violated absent a showing that a juror hearing the case was actually biased against him).  Petitioner has failed to support his claim with any evidence of actual or implied juror bias. Petitioner's claim that Lawson was somehow incompetent is pure speculation and completely unsupported by the record. Lawson indicated that she understood the proceedings, would alert the court if a problem arose, and that she could render a fair and impartial verdict. *See United States ex rel. Simmons v. Bramley*, 915 F.2d 1128, 1134 (7th Cir. 1990) (cursory allegations that are purely speculative cannot support a claim of lack of competence of counsel).

Accordingly, Petitioner has shown neither deficient performance, nor prejudice and this claim fails under both prongs of *Strickland.*

### B.   Claim Two

Petitioner alleges that counsel was ineffective for failing to seek suppression of a

statement obtained from Petitioner in violation of his *Miranda*[3] rights (Doc. 1 at 7). Specifically, Petitioner refers to incriminating statements made to arresting officer, Trooper Kurt Glaenzer, indicating that drugs may be hidden inside a seat in Petitioner's van (Doc. 2 at 21-32). Petitioner alleges that he was never read his *Miranda* rights and never waived those rights prior to making the incriminating statements (Doc. 2 at 13).

Petitioner raised this issue in his Rule 3.850 motion for post-conviction relief and the trial court denied the claim on the grounds that it was conclusively refuted by the record (App. F at 4). Specifically, the trial court noted:

> At the suppression hearing, Trooper Glaenzer testified that he did read the *Miranda* rights to Defendant and his brother prior to asking them any questions about drugs. In addition, Defendant, [through] counsel, acknowledged in his motion to suppress that Trooper Glaenzer did read him his *Miranda* warning.

(App. F at 4) (citations to record omitted). The trial court's factual determinations are supported by the record.

On February 5, 2004, Petitioner filed a motion to suppress evidence found in his van after he and his brother were stopped for speeding (App. A at 200).[4] The motion states that "[t]he trooper arrested Juan and [Petitioner] and read them *Miranda* rights and then they spoke about how they thought the cocaine ended up in their van." (App. A at 207). Furthermore, at a hearing on the motion to suppress, Trooper Glaenzer, the highway patrolman who had originally stopped

---

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966) (statements made in response to interrogation by a defendant in police custody admissible at trial only if prosecution can show that defendant was informed of certain rights prior to questioning).

[4]The van was initially stopped for speeding. Because the license tag did not match the van and the occupants could not produce the registration or other evidence of ownership, the officer became suspicious and called for back-up (App. O at 60). The brothers were arrested and the police determined that the vehicle needed to be towed. Subsequently, the police searched the van and found cocaine (App. O at 62).

the van for speeding, was asked whether he read Petitioner and his brother their *Miranda* rights and he indicated that he had done so prior to questioning or speaking with Petitioner regarding the cocaine (App. I at 69).   The trial court specifically determined that the statements made after Petitioner  was handcuffed and put into the back of the police car were pursuant to a properly Mirandized interview (App. I. at 191).   At trial, Trooper Glaenzer testified again that he read Petitioner and his brother their rights from a Florida Highway Patrol *Miranda* card and that they indicated that they understood their rights (App. O at 76).   A tape recording of the questioning was played at trial in which Trooper Glaenzer asked the interviewees whether they have had rights read to them and whether they understood those rights.   An unidentified speaker on the tape answered "yes." (App. O at 148).   Furthermore, another arresting officer, Corporal Dance, testified at trial that Trooper Glaenzer read Petitioner and his brother their *Miranda* rights in his presence prior to questioning them about the cocaine  (App. O at 257).

Petitioner does not explain how the state court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law.   Nor does Petitioner explain how the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented  in the state court proceedings.   Rather Petitioner merely argues that, contrary to testimony presented at his suppression hearing and at trial, he was not read his *Miranda* rights.   However, only when a state court's factual findings lack evidentiary support in the state court record or are plainly controverted by evidence therein should a federal habeas court overturn a state court's factual determinations. *See Hunter v. Secretary, Dept. of Corr.*, 395 F.3d 1196, 1200 (11th Cir. 2005); 28 U.S.C. § 2254(e).  Petitioner presents no evidence, much less clear and convincing evidence,

to show that he was not read his *Miranda* rights.  As such, counsel was not ineffective for failing

to move to suppress the statements Petitioner made to police after his arrest, and this claim fails

under *Strickland*.

### C.      Claim Three

Petitioner alleges that counsel was ineffective for failing to subpoena Florida Highway

Patrol ("FHP") log sheets in order to view a video recording from Trooper Glaenzer's patrol car

that recorded "everything from the initial stop until the trooper left the scene." (Doc. 1 at 8).

Petitioner alleges that the videotape would have shown that Trooper Glaenzer had "already given

the Petitioner [a ticket] and that Petitioner had freely [driven] away and Trooper Glaenzer

pursued to stop Petitioner a mile away again with no probable cause for another stop." (Doc. 2 at

16).  Petitioner claims that he was prejudiced by the omission because the videotape could have

been used at the suppression hearing to argue that Trooper Glaenzer unlawfully searched

Petitioner's van after he had completed the issuance of a traffic citation (Doc. 2 at 16).

Petitioner raised this issue in a Rule 3.850 motion for post-conviction relief and the trial

court denied the claim on the grounds that Trooper Glaenzer had testified that he did not have a

video camera in his patrol car and because Petitioner had conceded in his motion to suppress that

no videotape ever existed.  The court also noted that Petitioner had conceded in his Rule 3.850

motion that the alleged videotape had been destroyed and, as such, counsel could not have been

ineffective for failing to obtain a video that did not exist (App. F at 5).  The trial court's factual

and legal conclusions are supported by the record.

Although Petitioner asserted, without evidentiary support, in his Rule 3.850 motion that

a  videotape of the arrest existed, questions whose resolution depend heavily on the trial court's

appraisal of witness credibility and demeanor are deemed questions of fact. *Saldo v. Crosby*, 162 Fed.Appx. 915 (11th Cir.2006) (unpublished)[5] ( citing *Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir.1999) (en banc)). A determination of a factual issue made by a State court shall be presumed to be correct and Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e).  The trial court's determination that no videotape of the arrest existed was reasonable. In Petitioner's motion to suppress evidence, he stated that there was no videotape of the arrest (App. B at 8).  At trial, Trooper Glaenzer testified that none of the patrol cars at the scene of the arrest were equipped with video cameras (App. O at 124).   Petitioner presents no evidence, other than conclusory assertions, that a video of his arrest actually existed.[6]   Because no video existed, counsel was not ineffective for failing to

---

[5]This is an unpublished decision and is persuasive, but not binding, authority pursuant to Eleventh Circuit Rule 36–2. The Court notes this same rule applies to other Fed. Appx. cases cited herein.

[6] To the extent Petitioner argues that an audiotape of his interview at FHP proves that a video of the arrest existed, it should be noted that counsel for Petitioner's brother moved the trial court to exclude the second half of the tape because of "material in part two of the tape at the trooper station that is irrelevant and inflammatory." (App. O at 145).  The trial court determined that trial counsel made a strategic decision to exclude portions of an audiotape from evidence because it would have been more damaging to the defendants than helpful if the jury had heard that portion of the tape. Counsel's decision to exclude the audiotape was "well within the range of professionally reasonable judgments[.]" *Strickland*, 466 U.S. at 698.

obtain the video.  Furthermore, because no video existed, Petitioner cannot demonstrate that he suffered prejudice as a result of counsel's failure to subpoena the FHP log sheets.  As such, claim three fails under both prongs of *Strickland*.

### D.    Claim Four

Petitioner alleges that trial counsel was ineffective for failing to sufficiently argue for a judgment of acquittal on counts one and two of the information (Doc. 1 at 10).  In particular, Petitioner claims that there was no direct proof that he had knowledge or possession of the subject cocaine and, "had defense counsel made an adequate motion for judgment of acquittal, the Court would have been compelled to grant relief and terminate prosecution in this matter with regards to Petitioner."  (Doc. 17 at 6).

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief and the trial court denied the claim as "conclusively refuted by the record, as the motion for judgment of acquittal that was prepared by Mr. Crock was factually detailed and related the facts of Defendant's case to his argument." (App. F at 6).  The trial court's conclusion is clearly supported by the record.

In his closing argument, trial counsel specifically argued that the evidence did not support an inference that Petitioner had knowledge or control of the subject narcotics (App. O at 425).  Specifically, counsel argued that the State had not proven three necessary elements of the crimes with which he was charged:  1) knowledge that the drugs were in the van;  2) ability to exercise dominion and control over the drugs in the van; and  3) specific intent to traffic in narcotics (App. O at 426).  Absent supporting evidence in the record, this Court will not consider a habeas petitioner's mere assertions on a critical issue in his pro se petition to be of probative value. *See*

*Tejada v. Dugger*, 941 F.2d 1551, 1559 (11 Cir.1991) (recognizing that a petitioner is not entitled to habeas relief "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible").

Accordingly, the trial court's decision on this claim was not contrary to and did not involve an unreasonable application of federal law and was not based on an reasonable determination of the facts in light of the evidence presented in the state court proceeding. Claim Four is denied pursuant to 28 U.S.C. § 2254(d).

### E.    Claim Five

Petitioner alleges that trial counsel was ineffective for failing to object and/or move for mistrial because of the prosecutor's allegedly improper comments on his right to remain silent (Doc. 2 at 20). Specifically, Petitioner contends that during closing arguments, the prosecutor argued to the jury that an argument advanced by Petitioner's co-defendant was implausible. The prosecutor stated:

> In waiting for another officer to come, [Trooper Glaenzer] was talking to Juan Nava, the driver, and said, hey, can I search your car. Oh first he asked, do you have any weapons or anything illegal in your car. No. Wait a minute, pistola, postola, that's supposed to inform the officers that there's a gun in the car? Wouldn't it make better sense that if they wanted to inform the officers that there was a gun in the car, that when the officer asked, do you have any weapons. Yes, officer I'd like to inform you that there's weapons. No sir, no weapons. Anything illegal? No sir, nothing illegal.

(App. A at 542). The trial court reviewed these comments within the context of the surrounding arguments and found them to be an "invited response" under *United States v. Young,* 470 U.S. 1, 11-12 (App. F at 7). A review of the record supports the trial court's conclusion that the prosecutor's comments were not improper.

14

After Petitioner and his brother were stopped for speeding and Trooper Glaenzer ascertained that the van had an incorrect license tag, Petitioner's brother was ordered to exit the van. As he complied, he pointed at his brother and said in an elevated tone, "pistola, pistola" (App. O at 64). Trooper Glaenzer testified that he was afraid that this was a signal to Petitioner, who was still in the van, to get a gun. Consequently, he pulled Petitioner from the van (App. O at 66). During the closing argument of Petitioner's co-defendant, his counsel mentioned the incident and argued that the officers had reached the wrong conclusion when they heard "pistola" because the brothers had simply intended to alert the officers to the presence of a weapon in the vehicle:

> Pistola, pistola. Well, anybody in that situation is going to be fearful that there may be something going on. But what does that bit of information about this case tell us in this environment were we're seeking truth and justice in a dispassionate way. It tells us these gentlemen, Juan Nava, and his brother, Jose, were trying to inform, however inartfully and however imprecisely, they were trying to inform the police that there was a firearm in the van.

(App. O at 516). Clearly, the prosecutor's comments were in response to Juan Nava's argument that the police misunderstood why he said "pistola." As such, even if the prosecutor's statements were an improper comment on Petitioner's failure to testify, a finding not made by this Court, under the doctrine of invited response counsel had no grounds to object to the prosecutor's statement. *See Young*, 470 U.S. at13 (if prosecutor's remarks were "invited," and did no more than respond substantially in order to "right the scale," such comments would not warrant reversing a conviction). Counsel is not ineffective for failing to make a futile objection and this claim fails under the first prong of *Strickland*.

### F.     Claim Six

15

Petitioner alleges that counsel was ineffective for failing to properly investigate the FHP policy manual regarding towing and impoundment (Doc. 2 at 22).   Specifically, Petitioner alleges that Trooper Glaenzer violated FHP policy when he failed to ask Petitioner's co-defendant if he had a preference of a particular towing company  (Doc. 2 at 23).   Instead, Trooper Glaezner called a truck from the FHP wrecker allocation rotation list (Doc. 2 at 23). Petitioner alleges that Trooper Glaezner by-passed the policy set forth in the manual in order to justify an illegal search of the van because, had the defendants requested a specific towing company and accompanied the van, there would have been no need to inventory the van's contents (Doc. 2 at 24-25).[7]

Petitioner raised this claim in his Rule 3.850 motion for post-conviction relief and the trial court denied the claim.  The trial court noted that both defendants had elected to refuse to cooperate at the suppression hearing and as such, counsel "did not have any testimony from the brothers available to present at the suppression hearing to claim that they would have chosen a preferred tow truck company instead of the FHP rotation wrecker to tow the van." (App. F at 7). As such, defense counsel could not be faulted for Petitioner's refusal to cooperate (App. F at7).

---

[7] At issue is the portion of the *Florida Highway Patrol Policy Manual* which states:

If the owner/driver of the vehicle requests a rotation wrecker, specific company or auto club to remove the vehicle and the owner/driver is present and accompanies the vehicle with the wrecker, no inventory is required. A notation in the inventory section of the form will be made to indicate that the owner/driver went with the vehicle.

§ 11.04.04(F)(3), Vehicle Towing and Impoundment.

A review of the record and relevant Florida law supports the trial court's conclusion that counsel was not ineffective for failing to raise the issue of whether Trooper Glaenzer had complied with FHP policy.

In their motion to suppress evidence, Petitioner and his co-defendant argued that Trooper Glaenzer did not have the right to conduct the search of the vehicle that lead to the discovery of cocaine (App. B at 20).   However, at the hearing on the defendants' suppression motion, counsel informed the court that both Petitioner and his co-defendant waived their right to attend and participate in the hearing (App. I at 191).   The trial court noted that there were "some things" counsel  could have done better had the defendants attended the hearing, but that counsel "did the best [they] could without [the defendants] being present." (App. I at 192).

At the hearing on the motion to suppress, the trial court heard testimony from Trooper Glaenzer and argument from counsel for both defendants and the State.   The trial court determined:

> [T]here was probable cause for the arrest of both [defendants] from the evidence itself, when there was no record of registration in the state in the name of the defendant. Considering this from the view of the law enforcement officer at the scene, armed with the information he had available at the time, I believe there was probable cause to believe that Section 320.02 had been violated, hence, a misdemeanor, and a proper arrest.

App. I at 189.  The court then determined that there had been an inventory conducted pursuant to a standard policy, stating, "I believe that the defendants were, in fact properly arrested at the time with a proper inventory search being conducted." (App. I at 189, 190).

Under Florida law, there are three circumstances in which law enforcement officers may search a motor vehicle in the absence of a search warrant: (1) incident to a lawful arrest of a

recent occupant of the vehicle;  (2) under the "automobile exception" to the warrant requirement, i.e., based on probable cause to believe that the vehicle contains contraband or other evidence of a crime; and (3) when a vehicle has been impounded, as part of a reasonable inventory search following standardized procedures. *See Jaimes v. State*, 862 So.2d 833, 836 (Fla. 2d DCA 2003); *see also State v. Green*, 943 So.2d 1004, 1006 n. 1 (Fla. 2d DCA 2006) (noting that exigent circumstances are not required in order to apply the "automobile exception" to the warrant requirement).

In the instant case, the search of Petitioner's van  was valid under both the first and the third circumstances allowing a vehicle search without a warrant.  Because both occupants of the vehicle were arrested prior to the search that yielded the cocaine, the search of the van was legal as incident to a lawful arrest of a recent occupant of the vehicle.  In addition, Petitioner concedes that, because it was unregistered, the van could not have been driven away and needed to be towed (Doc. 2 at 24).  According to the FHP policy manual, in order to avoid an inventory search when a vehicle is towed, the owner/driver of the vehicle must be present and must accompany the vehicle with the wrecker. *See Florida Highway Patrol Policy Manual*, § 11.04.04(F)(3). Because of the arrests, neither defendant could have accompanied the vehicle and a valid inventory search would have ensued even had Petitioner's co-defendant requested a specific towing company.  *See Whren v. United States*, 517 U.S. 806, 812 n. 1 (1996) ("An inventory search is the search of property lawfully seized and detained, in order to ensure that it is harmless, to secure valuable items (such as might be kept in a towed car), and to protect against false claims of loss or damage.").  Consequently, any argument by counsel that Trooper Glaenzer should have asked whether the defendants had a preferred towing company would have been

dismissed as irrelevant. Counsel is not ineffective for failing to raise a futile or irrelevant argument. *Bolender v. Singletary*, 16 F.3d 1547, 1573) (failure of counsel to raise meritless issues does not constitute ineffective assistance). Claim six fails under the first prong of *Strickland*.

### G.    Claim Seven

In claim seven, Petitioner argues that the trial court erred in denying his motion for a judgment of acquittal (Doc. 2 at 27). Specifically, Petitioner argues that the state did not present sufficient evidence to prove: 1) that Petitioner had knowledge of the contents of the bucket that contained cocaine; 2) that Petitioner had specific intent to traffic in drugs as opposed to something else; or 3) that Petitioner had the ability to exercise dominion and control over the cocaine (Doc. 2 at 21-31). Petitioner raised this issue on direct appeal and the Fifth District Court of Appeal *per curiam* affirmed (App. C).

Under Florida law, a motion for judgment of acquittal challenges the legal sufficiency of the evidence. *State v. Odom*, 862 So.2d 56, 59 (Fla. 2d DCA 2003). The trial court should grant a judgment of acquittal if the State fails to present legally sufficient evidence to establish each element of the crime charged. *Id*. On federal habeas review, the question for this Court concerning the sufficiency of evidence in a state court proceeding is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). For a judgment of acquittal to be properly denied, it is not necessary that all facts favor the prosecution. "The simple fact that the evidence gives some support to the defendant does not demand acquittal." *Cosby v. Jones*, 682 F.2d 1373, 1383 n. 21

19

(11th Cir.1982).

In the instant case, the record is more than sufficient to support the trial court's denial of

Petitioner's motion for a judgment of acquittal.  As described by the State:

> The State presented multiple law enforcement officers who testified that 3 kilo bricks of cocaine were found inside of a bucket of drywall mud.  The bucket was inside of a van driven by [Petitioner's] brother (and co-defendant). Appellant was the owner and was riding in the passenger seat.
>
> . . .
>
> Troopers Glaenzer, Dance, Cotton and Herring all testified that [Petitioner] and his brother told them that they were forced to drive their van to North Carolina to pick up something.  They had borrowed money from a drug dealer, who worked for a big drug dealer in Miami.  According to the brothers, they were forced to conduct this transaction to keep their families and themselves from being killed. They even purchased the rifle discovered in the vehicle for protection.
>
> An inventory of the vehicle revealed, in addition to the rifle and cocaine, $3500.00 in cash, additional bags of the same kind the drugs were hidden in, and a large digital scale of the kind frequently used in drug transactions.  Officer Glaenzer recalled that [Petitioner] and his brother told him that there were probably more drugs hidden in the car.  Officer Dance testified that prior to their statements being recorded, they referred to "dope" being found in the car.

(App. C).

Petitioner was convicted of trafficking in cocaine.  Pursuant to § 893.135(1)(b), Florida

Statutes (2006), a person traffics in cocaine *either* by knowingly selling, purchasing,

manufacturing, delivering or bringing into this state 28 grams or more of cocaine or by being in

actual or constructive possession of 28 grams or more of cocaine. It is thus possible to commit

the offense of trafficking in cocaine without actually intending to sell the cocaine. *See Johnson v.*

*State*, 712 So. 2d 380, 383 (Fla. 1998).

Because Petitioner was not found in actual possession of cocaine, the State's trafficking

charge against him was premised upon his constructive possession of the cocaine found in the

van.[8]  To prove constructive possession, the State must show beyond a reasonable doubt that the defendant both knew of the presence of the contraband and had the ability to exercise dominion and control over it. *Santiago v. State*, 991 So.2d 439, 441 (Fla. 2d DCA 2008); *C.M. v. State*, 818 So.2d 554, 555 (Fla. 2d DCA 2002).  Where contraband is found in a location accessible to more than one person, the defendant's knowledge of the presence of the contraband on the premises and his ability to exercise dominion and control over it will not be inferred and must be established by independent proof. *Wagner v. State*, 950 So.2d 511, 513 (Fla. 2d DCA 2007). Such independent proof "may consist of evidence that the defendant had actual knowledge of the presence of the contraband or evidence of incriminating statements or circumstances, other than simple proximity to the contraband, from which the jury could infer the defendant's knowledge." *Id*. (citing *Woods v. State*, 765 So.2d 255, 257 (Fla. 2d DCA 2000).

Trooper Glaenzer testified that the defendants told him they had picked up the cocaine in North Carolina and were transporting it to Melbourne in order to repay money borrowed from a drug dealer (App. O at 77-78).  Trooper Dance testified that the defendants told him that they had to transport the "dope" in order to repay a debt to a drug dealer (App. O at 259).  The defendants  advised Trooper Glaenzer that there could be more contraband in the van and to check under a makeshift seat in the vehicle (App. O at 78).  Because incriminating statements or circumstances may be used to infer knowledge of contraband, Petitioner's argument that the State presented no independent proof of his knowledge of the cocaine or of his ability to exercise

---

[8] Actual possession means that the controlled substance is in the defendant's hand, in a container in the defendant's hand, or is so close as to be within ready reach and is under the control of the defendant.  Constructive possession means the controlled substance is in a place over which the defendant has control or in which the defendant has concealed it. *See Florida Standard Jury Instruction*, § 25.7 (Drug Abuse – Possession).

dominion and control over the cocaine is without merit.

Viewing the evidence in the light most favorable to the prosecution, this Court cannot say that no rational trier of fact would have found the essential elements of Florida Statute § 893.135(1)(b) beyond a reasonable doubt.  Petitioner owned the van in which the cocaine was found and evidence was presented that both defendants were aware that they were transporting contraband from North Carolina to Melbourne in order to repay a debt to a drug dealer. Accordingly, there was sufficient evidence to convict Petitioner of trafficking in cocaine and the trial court did not violate Petitioner's Fourteenth Amendment rights by submitting the case to the jury.  Claim Seven is denied.

### H.    Claim Eight

In claim eight, Petitioner argues that the trial court committed fundamental error when the standard jury instructions given, combined with misleading statements as to the law by the prosecution in the closing arguments "undermined Petitioner's theory of defense." (Doc. 2 at 25). In particular, Petitioner argues that, without exclusive possession of the vehicle in which the drugs were found, it could not be presumed that he possessed the cocaine , but that the State attorney argued that constructive possession could be proven by the mere presence of the individuals within a car (Doc. 2 at 37-38).

Petitioner takes issue with the Florida standard jury instruction dealing with joint possession which was read at trial without objection.  The trial court instructed the jury that:

> Possession may be joint, that is, two or more persons may joint – may jointly have possession of an article, exercising control over it.  In that case, each of the persons is considered to be in possession of that article.  If a person has exclusive possession of a thing, knowledge of its presence may be inferred or assumed.  If a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed.

(App. O at 620, 630, 632).  Petitioner raised this issue on direct appeal and the Fifth District Court of Appeal *per curiam* affirmed.

This claim is procedurally barred.  In his direct appeal, Petitioner claimed that fundamental error occurred when the standard jury instruction, in combination with misleading statements by the prosecution  undermined his theory of defense  (App. C). However, Petitioner did not state a federal law basis for his claim in his state court brief. For example, he did not cite in conjunction with the claim a federal source of law or a case deciding such a claim on federal grounds.  Petitioner argued only that the trial court gave a standard jury instruction and that the State attorney incorrectly argued that the defendants were guilty of the charge because they jointly occupied the car. Petitioner cited only Florida state cases in support of his claim, and those cases addressed only state law issues, including the standard for determining whether an error was fundamental.  If Petitioner wished to claim that the trial court's jury instructions denied him the due process of law guaranteed by the Fourteenth Amendment, he should have said so in his state court brief. Because Petitioner did not alert the state courts that his claim was federal in nature, he did not satisfy the exhaustion requirement of 28 U.S.C. § 2254. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995); *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir.2003) (finding that the petitioner's federal habeas claims were not raised in the state court when the direct appeal made no reference to the federal constitutional issues raised in the federal habeas petition). Petitioner would be precluded from now raising this claim in the state courts as the state procedural rules do not provide for a second direct appeal, and a second Rule 3.850 motion would be subject to dismissal as a successive motion, pursuant to Rule 3.850(f). Therefore, the

claim is procedurally defaulted. Petitioner does not allege cause for his failure to present his federal claim in the state courts, or that he will suffer prejudice as a result of this court's failure to review the claim. Furthermore, he has failed to show that he is entitled to review under the "fundamental miscarriage of justice" exception to the procedural bar. Therefore, Petitioner is not entitled to federal review of his claim.

Notwithstanding the procedural default, claim eight lacks merit. Petitioner argues that his "mere ownership of, and presence in, the instantly jointly occupied vehicle did not prove constructive possession of items not in plain view." (Doc. 2 at 37). Petitioner further argues that the State attorney "incorrectly argued that the Nava brothers were guilty of the charge because they jointly occupied the car containing the cocaine . . ." (Doc. 2 at 35). Petitioner mischaracterizes the State's case and minimizes the evidence presented at trial.

As discussed above, the State presented evidence, in addition to mere proximity to the contraband, that Petitioner had knowledge of the cocaine in the van and could exercise dominion and control over it. *See* discussion *supra*, Claim Seven. Although the State strongly argued that both defendants knew that cocaine was in the van, the State specifically noted that, if a person does not have exclusive control over something, knowledge of its presence may not be inferred (App. O at 594). Furthermore, the jury instruction regarding joint possession, which was read four times at trial, made it clear that, if a person does not have exclusive possession of a thing, knowledge of its presence may not be inferred or assumed. *See* App. O at 620, 630, 632. Petitioner has failed to show that the jury instructions relieved the State of its burden to prove each element of trafficking beyond a reasonable doubt, or that there is a reasonable likelihood that the jury applied the instructions in an unconstitutional manner. Therefore, notwithstanding

24

the procedural bar, claim eight lacks merit and is due to be denied.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

### IV.    Certificate of Appealability

This Court should grant an application for certificate of appealability only if the Petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).   To make such a showing "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Secretary Department of Corrections*, 568 F.3d 929, 934 (11th Cir. 2009).   When a district court dismisses a federal habeas petition on procedural grounds without reaching the underlying constitutional claim, a certificate of appealability should issue only when a petitioner shows "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id*; *Lamarca*, 568 F.3d at 934.   However, a  prisoner need not show that the appeal will succeed.  *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

Petitioner has not demonstrated that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  Moreover, Petitioner cannot show that jurists of reason would find this Court's procedural rulings debatable.  Petitioner has failed to make a substantial showing of the denial of a constitutional right.   Thus, the Court will deny Petitioner a certificate of appealability.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.      The Petition for Writ of Habeas Corpus (Doc. 1) filed by Josae Mario Nava is

**DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of Court shall enter

judgment accordingly.

2.      Petitioner is **DENIED** a Certificate of Appealability.

3.      The Clerk of the Court is directed to enter judgment accordingly and close this

case.

**DONE AND ORDERED** at Orlando, Florida, this 10th  day of June 2011.


ANNE C. CONWAY
United States District Judge


Copies to:
OrlP-4 6/10
Jose Mario Nava
Counsel of Record